UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NATHAN EDWARDS,

        Plaintiff,

                                  No. 12-10312

-vs-                            District Judge Paul D. Borman
                                  Magistrate Judge R. Steven Whalen

DR. JENKINS, ET AL.,

        Defendants.

_____ /

## REPORT AND RECOMMENDATION

On January 24, 2012, Plaintiff Nathan Edwards, a prison inmate in the custody of the Michigan Department of Corrections ("MDOC"), filed a *pro se* civil complaint under 42 U.S.C. § 1983, alleging deliberate indifference to his serious medical needs. Before the Court is a Motion for Summary Judgment filed by Defendants Scutt, Jones, Hunter, Ryan, Creger, Wilson, Smith, Crawford, Hense, Aiken, Pandya, Haase, Monroe and Willard [Doc. #31], and a Motion for Summary Judgment filed by Defendants Ives and McMillan [Doc. #37]. Both Motions have been referred for Reports and Recommendations pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons discussed below, I recommend that both Motions be GRANTED.

## I. FACTS

In general terms, Plaintiff alleges that he is a long-time gout sufferer. He states that due to misdiagnosis and inadequate treatment by MDOC medical providers, his great left toe had to be amputated on April 6, 2010. *Complaint* [Doc. #1], pg. ID 7. He makes the following allegations specific to each of the Defendants.[1]

_____

[1] Plaintiff filed an amended complaint (more exactly, a supplemental complaint) on February 24, 2012 [Doc. #5]. However, none of the claims in that pleading name the

McMillan, Ives and Jones reviewed his grievances, but "refused to acknowledge the errors committed against this Plaintiff." *Id.*

McMillan, Creger, Wilson and Jones denied medical orders to provide him with an orthopedic device that was prescribed by the doctor who performed the amputation. *Id.*

McMillan, Wilson and Smith charged him a $5.00 co-pay for follow-up care. *Id.*, 7-8.

McMillan, Crawford and Scutt "refused to process complaints" that Plaintiff brought in a grievance. *Id.*, 8.

McMillan, Hense, Wilson, Pandy and Aiken failed to provide a prescribed medical device for his foot. *Id.*

Haase, Wilson, Monroe, Willard refused to obey an unspecified medical order, causing unspecified medical harm and injury. *Id.*

Ryan, Wilson and Jones refused to "properly treat" an open wound on the sole of Plaintiff's left foot. *Id.*

Each of the Defendants has submitted an affidavit of facts. Debra Scutt was and is the Warden of the G. Robert Cotton Facility. She states that a particular grievance filed by Plaintiff was rejected, but that "Plaintiff has made no other specific allegations against me." Doc. #31, Exhibit 1.

Alfred Jones was an Administrative Assistant with the MDOC. His role was limited to responding to four step two grievances filed by Plaintiff. *Id.* Exhibit 2.

Joyce Hunter was a Health Unit Manager at the Cotton Facility. She notes that Plaintiff made no specific allegations against her, adding, "I never refused medical care to Plaintiff, nor was I aware of whether Plaintiff had any serious medical needs that were

---

Defendants who have brought the present Motions.

being ignored." *Id*. Exhibit 3.

Joy Ryan was a Registered Nurse employed at the Cotton Facility. She heard a step one grievance filed by Plaintiff, adding that she does not have the authority to write orders, and has "never refused to obey a medical order as it pertained to prisoner Edwards." *Id*. Exhibit 4.

Michelle Couling, nee Creger, denies that she ever denied an order for a medical device ordered by Dr. Page, stating, "It is not within my scope of practice to either approve or deny a medical order." *Id*. Exhibit 5.

Mary Ann Wilson, an R.N., was Acting Nurse Supervisor at the Cotton Facility. She states that she did not deny Dr. Page's order for a medical device, and that it is not within her scope to either approve or deny a medical order. *Id*. Exhibit 6.

Dorene Smith was employed as an R.N. at the MDOC's Egeler Reception and Guidance Center. She states that at no time did she ever fail to follow the orders of a medical service provider, and that at no time was she "aware that prisoner Edwards had any serious medical needs that were being ignored." *Id*. Exhibit 7.

Tracy Crawford states that two of Plaintiff's grievances were rejected at both step one and step two because they were vague. She notes that there are no other specific allegations against her. *Id*. Exhibit 8.

James Hense was an R.N. employed at the Cotton Facility. He states that he interviewed Plaintiff regarding a grievance about receiving a prosthetic device. He is not authorized to order such a device. He informed his supervisor that Plaintiff would "sign off" on his grievance when he received the device. *Id*. Exhibit 9.

Subina Aiken was an R.N. at the Southern Region Health Care Administration. She responded to a step two grievance filed by Plaintiff. *Id*. Exhibit 10.

Haresh Pandya, M.D., was the Regional Medical Officer for the Southern Region Health Care Administration, tasked with monitoring medical care. He did not provide any direct patient care to Plaintiff. However, between July 19, 2011 and March 8, 2012, he approved seven requests from the Cotton Facility regarding Plaintiff's medical care, including tennis shoes; orthopedic prescription shoes and socks; Physical Therapy evaluation of prosthetic device; athletic shoes; tennis shoes; and Santyl ointment for wound care (two times). On March 23, 2012, he deferred (not denied) approval of certain appliances that "require Corizon UMD approval, not RMO approval." *Id*. Exhibit 11.

Linda Haase was an R.N. at the Cotton Facility. She states that she never refused to obey a medical order, and that it is not within the scope of her practice to either approve or deny a medical order. *Id*. Exhibit 13.

Patricia Willard was a Registered Dietician at Southern Regional Healthcare, assigned to the Cotton facility from September, 2011 to January, 2012. She states that she responded to a communication from Plaintiff on January 9, 2012. Plaintiff had demanded a "uric acid free, high calcium, high fiber, low cholesterol, low fat diet." She responded that the regular dining hall food had adequate calcium and fiber and was low in cholesterol and fat. She advised him to "choose the fruit in place of the baked desserts," and to follow his doctor's recommendation to drink adequate water. She stated that "there is no such thing as a uric acid free diet." This was the extent of her involvement. *Id*. Exhibit 14.

Connie Ives was a Nursing Supervisor at the Cotton Facility. She reviewed two of Plaintiff's grievances, but did not personally see him. Doc. #37, Exhibit 1.

Larry McMillan was a Grievance Coordinator at the Cotton Facility, whose job was to "assign a responder to each grievance and process it to the responder with a date of

return."  He "would not address those issues or have knowledge of Plaintiff's medical

issues as [H]ealthcare would be who would address those issues."  *Id.* Exhibit 2.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there

is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law." Fed. R.Civ.P. 56(c).  To prevail on a motion for summary

judgment, the non-moving party must show sufficient evidence to create a genuine issue

of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990).

Drawing all reasonable inferences in favor of the non-moving party, the Court must

determine "whether the evidence presents a sufficient disagreement to require submission

to a jury or whether it is so one-sided that one party must prevail as a matter of law."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202

(1986).  Entry of summary judgment is appropriate "against a party who fails to make a

showing sufficient to establish the existence of an element essential to that party's case,

and on which that party will bear the burden of proof at trial."  *Celetox Corp. v. Catrett*,

477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  When the "record taken as a

whole could not lead a rational trier of fact to find for the nonmoving party," there is no

genuine issue of material fact, and summary judgment is appropriate.  *Simmons-Harris v.

Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

Once the moving party in a summary judgment motion identifies portions of the

record which demonstrate the absence of a genuine dispute over material facts, the

opposing party may not then "rely on the hope that the trier of fact will disbelieve the

movant's denial of a disputed fact," but must make an affirmative evidentiary showing to

defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

The non-moving party must identify specific facts in affidavits, depositions or other

factual material showing "evidence on which the jury could *reasonably* find for the

plaintiff." *Anderson*, 477 U.S. at 252 (emphasis added). If, after sufficient opportunity

for discovery, the non-moving party cannot meet that burden, summary judgment is

clearly proper. *Celotex Corp.*, 477 U.S. at 322-23.

### III.   DISCUSSION

Under the Eighth Amendment, prison officials may not act with deliberate

indifference to the medical needs of their prisoners. *Estelle v. Gamble,* 429 U.S. 97, 103-

104 (1976). A deliberate indifference claim has two components, one objective and the

other subjective. *Farmer v. Brennan,* 511 U.S. 825, 834 (1994); *Comstock v. McCrary,*

273 F.3d 693, 702 (6th Cir. 2001). Under the objective component, "the plaintiff must

allege that the medical need at issue is 'sufficiently serious.'" *Id.* Under the subjective

component, "the plaintiff must allege facts which, if true, would show that the official

being sued subjectively perceived facts from which to infer substantial risk to the

prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Id.*

Deliberate indifference to medical needs may be established by showing an

interruption of a  prescribed plan of treatment, or a delay in medical treatment. *Estelle v.*

*Gamble, supra; Caldwell v. Moore*, 968 F.2d 595, 602 (6th Cir. 1992).  However,

"[w]here a prisoner has received some medical attention and the dispute is over the

adequacy of the treatment, federal courts are generally reluctant to second guess medical

judgments and to constitutionalize claims which sound in state tort law." *Westlake v.*

*Lucas*, 537 F.2d 857, 860, n.5 (6th cir. 1976). *See also Sanderfer v. Nichols*, 62 F.3d 151,

154 (6th Cir. 1999), citing *Estelle v. Gamble, supra* ("Deliberate indifference, however,

-6-

does not include negligence in diagnosing a medical condition").

Although Plaintiff has filed a brief response to these Motions, *see* Doc. #41, he has not offered any evidence, by his own affidavit or otherwise, to rebut the information provided in the Defendants' affidavits, which shows that, for the most part, they had no direct involvement in Plaintiff's medical care.

Debra Scutt was the Warden of the Cotton Facility. She is not a medical provider, and had no direct involvement with the Plaintiff or his medical care.  The fact that she was the highest administrative authority in the prison is insufficient to establish liability. Indeed, supervisory liability under § 1983 is precluded even if the supervising entity is aware of improper activity of its subordinates and fails to act; it must be shown that the supervisory officials "actively participated in or authorized" the illegal activity.  *Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

In addition, the plaintiff in a § 1983 case must clearly show that a named defendant was personally involved in the allegations underlying the Complaint. *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir.  1984). "To recover damages under 42 U.S.C. § 1983, a plaintiff must establish a defendant's *personal responsibility* for the claimed deprivation of a constitutional right." *Broder v. Corr. Med. Servs., Inc.,* 2008 WL 704229, at *7 (E.D.Mich. Mar.14, 2008) (emphasis added, quoting *Diebitz v. Arreola,* 834 F.Supp. 298, 304 (E.D.Wis.1993)).  *See also Rizzo v. Goode,* 423 U.S. 362, 372–73 (1976) (liability under § 1983 is predicated upon an affirmative link or connection between the defendant's actions and the claimed deprivations). There are no specific allegations in the complaint against Defendant Hunter. The Complaint alleges that Defendant Monroe failed to obey an unspecified medical order, causing unspecified medical harm and injury. In his

-7-

affidavit, Monroe states that he had no interaction with the Plaintiff. Plaintiff has failed to offer any evidence on which a reasonable trier of fact could find that Hunter or Monroe had personal involvement in any actions that violated his Eighth Amendment rights.

The involvement of Defendants Jones, Ryan, Crawford, Hense, Aiken, Ives and McMillan was limited to responding to or processing grievances. However, "a court may not impose liability under 42 U.S.C. § 1983 on a defendant simply because that defendant denied an administrative grievance or failed to act based upon information contained in the grievance." *Corsetti v. Hackel*, 2013 WL 2372284, *17 (E.D.Mich. 2013)(Lawson, J.), citing *Shehee,* 199 F.3d at 300; *Skinner v Govorchin*, 463 F.3d 518, 525 (6th Cir. 2006).

Notwithstanding generalized allegations in the complaint that Defendants Creger (now Couling), Wilson and Haase refused to obey medical orders, Plaintiff has offered no evidence as to precisely what orders were refused, and how he was harmed.[2] These Defendants themselves state not only that they have never refused to obey medical orders, but that it was not within the scope of their practice to approve or deny medical orders.

Plaintiff has also alleged that McMillan, Wilson and Smith charged him a $5.00 copay for follow-up care. This Court has already held, in dismissing certain Defendants, that "[i]t is constitutional to charge inmates a small fee for health care where indigent inmates are guaranteed service regardless of ability to pay." *See* Order of Partial Dismissal [Doc. #6], p.5.

---

[2] Plaintiff did allege that Defendant Mary Ann Wilson, a Nurse Supervisor, failed to provide a medical device for his foot. In her affidavit, however, Wilson states that based on a review of MDOC records, "Plaintiff was sent too Physical Therapy on 10/27/11 to see the certified Orthotist. Custom molded shoes were recommended. Superwide tennis shoes were approved on 12/1/11. Plaintiff was issued the recommended shoes on 1/12/12 and 2/12/12, accepted them, and stated they fit." *Wilson Affidavit*, ¶ 5. This is consistent with the affidavit of Dr. Pandya, who approved the shoes.

Defendant Willard, the dietician, gave Plaintiff advice on how to maintain a higher fiber, lower fat diet, including eating fruit and high fiber cereal, and drinking lots of water. While Plaintiff might not like that advice, or deem it sufficient, his inquiry was adequately answered, and no rational trier of fact could find that Willard was deliberately indifferent to Plaintiff's medical or dietary needs.

Finally, although Dr. Pandya was not directly involved in Plaintiff's medical care, he did approve seven requests from medical staff, including the orthotic shoes that Plaintiff required. Being responsive to the requests of Plaintiff's medical providers, he could not be found to have been deliberately indifferent.

In his response to this Motion [Doc. #41], Plaintiff states that he was denied "adequate medical care and treatment that is comparable to that in the local community." *Id*. at 4.  That might or might not be true, and I am not unsympathetic to Plaintiff's medical condition, nor do I wish to trivialize his discomfort.  After all, the man lost a toe. But the test for deliberate indifference under the Eighth Amendment is much more difficult to meet that the test for medical malpractice.  Even a misdiagnosis does not rise to the level of deliberate indifference. *Sanderfer v. Nichols, supra*.  Here, the Plaintiff has received medical care, including surgery, physical therapy, and orthotic devices.  Whether or not he agrees or is satisfied with his level of care is beside the point.  Plaintiff has not shown a constitutional violation sufficient to withstand these Defendants' Motions for Summary Judgment.

## IV.   CONCLUSION

For these reasons, I recommend that the  Motion for Summary Judgment filed by Defendants Scutt, Jones, Hunter, Ryan, Creger, Wilson, Smith, Crawford, Hense, Aiken, Pandya, Haase, Monroe and Willard [Doc. #31], and the Motion for Summary Judgment

filed by Defendants Ives and McMillan [Doc. #37] be GRANTED.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: August 30, 2013        s/ R. Steven Whalen
                                       R. STEVEN WHALEN
                                       UNITED STATES MAGISTRATE JUDGE

I hereby certify that a copy of the foregoing document was sent to parties of record on August 30, 2013, electronically and/or by U.S. Mail.

                                       s/Michael Williams
                                       Case Manager for the
                                       Honorable R. Steven Whalen