UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NATHAN EDWARDS,

       Plaintiff,

v.

DR. JENKINS, *et al.*,

       Defendants.
_____/

Case No. 12-10312

Paul D. Borman
United States District Judge

R. Steven Whalen
United States Magistrate Judge

OPINION AND ORDER (1) ADOPTING MAGISTRATE JUDGE WHALEN'S AUGUST 30, 2013 REPORT AND RECOMMENDATION (ECF NO. 50) AND OVERRULING PLAINTIFF'S OBJECTIONS (ECF NO. 51); (2) ADOPTING MAGISTRATE JUDGE WHALEN'S NOVEMBER 21, 2013 REPORT AND RECOMMENDATION (ECF NO. 52) AND OVERRULING PLAINTIFF'S OBJECTIONS (ECF NO. 55); (3) GRANTING DEFENDANTS' SCUTT, JONES, HUNTER, RYAN, CREGER, WILSON, SMITH, CRAWFORD, HENSE, AIKEN, HAASE, MONROE, WILLARD, PANDYA, IVES AND MCMILLAN'S MOTIONS FOR SUMMARY JUDGMENT (ECF NOS. 31, 37); (4) DENYING PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS (ECF NO. 45); (5) ORDERING APPOINTMENT OF COUNSEL FOR PLAINTIFF; AND (6) ORDERING DEFENDANTS SQUIER AND JENKINS TO ANSWER OR OTHERWISE RESPOND TO PLAINTIFF'S COMPLAINT ON OR BEFORE JUNE 2, 2014

On August 30, 2013, Magistrate Judge Steven Whalen issued a Report and Recommendation to grant Defendants Scutt, Jones, Hunter, Ryan, Creger, Wilson, Smith, Crawford, Hense, Aiken, Pandya, Haase, Monroe, Willard, Ives and McMillan's Motions for Summary Judgment. (ECF No. 50, Report and Recommendation.) On September 13, 2013, Plaintiff filed Objections to the 8/30/13 Report and Recommendation. (ECF No. 51, Objections.) On November 21, 2013, Magistrate Judge Whalen issued a separate Report and Recommendation to deny Plaintiff's Motion for Judgment on

1

the Pleadings. (ECF No. 52, 11/21/13 Report and Recommendation.) On December 5, 2013, Plaintiff filed Objections to the 11/21/13 Report and Recommendation. (ECF No. 55, Objections.)

This Court reviews *de novo* the portions of a report and recommendation to which objections have been filed. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). A district "court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.* Having conducted a *de novo* review of the parts of the Magistrate Judge's Reports and Recommendations to which valid objections have been filed pursuant to 28 U.S.C. § 636(b)(1), the Court ADOPTS both Reports and Recommendations.

**I.  BACKGROUND**

The Magistrate Judge adequately summarized the background of this case in his 8/30/13 Report and Recommendation and the Court adopts that summary here. (ECF No. 50, 8/30/13 Report and Recommendation 1-5.) Presently before the Court are the 8/30/13 Report and Recommendation relating to certain MDOC Defendants' motions for summary judgment and the 11/21/13 Report and Recommendation relating to Plaintiff's motion for "judgment on the pleadings" as to unspecified Defendants. The Medical Defendants in this case, Dr. Harriet Squier, MD and Dr. Eddie Jenkins, MD, filed waivers of answer in this case, have not filed dispositive motions and are not the subject of the Reports and Recommendations which the Court reviews in this Opinion and Order. *See* ECF No. 47, Harriet Squier, M.D. and Eddie Jenkins, M.D.'s Response to Plaintiff's Motion for Judgment on the Pleadings.

For the reasons that follow, the Court ADOPTS the Magistrate Judge's Reports and Recommendations, GRANTS the Defendants' motions for summary judgment, DENIES Plaintiff's motion for judgment on the pleadings, ORDERS Defendants Squier and Jenkins to Answer the

Plaintiff's Complaint and GRANTS Plaintiff's request for the appointment of counsel.

## II.    STANDARD OF REVIEW

A district court judge reviews *de novo* the portions of the report and recommendation to which objections have been filed. 28 U .S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  A district "court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.*  Objections must be timely to be considered.  A party who receives notice of the need to timely object yet fails to do so is deemed to waive review of the district court's order adopting the magistrate judge's recommendations. *Mattox v. City of Forest Park,* 183 F.3d 515, 519-20 (6th Cir.1999).  "[A] party *must* file timely objections with the district court to avoid waiving appellate review." *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987) (emphasis in original).

Only those objections that are specific are entitled to a *de novo* review under the statute. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir.1986).  "The parties have the duty to pinpoint those portions of the magistrate's report that the district court must specially consider." *Id*. (internal quotation marks and citation omitted).  A general objection, or one that merely restates the arguments previously presented, does not sufficiently identify alleged errors on the part of the magistrate judge.  An "objection" that does nothing more than disagree with a magistrate judge's determination, "without explaining the source of the error," is not considered a valid objection. *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir.1991).

Specific objections enable the Court to focus on the particular issues in contention. *Howard*, 932 F.2d at 509.  Without specific objections, "[t]he functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of

3

time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrate's Act." *Id.* "'[O]bjections disput[ing] the correctness of the magistrate's recommendation but fail[ing] to specify the findings [the objector] believed were in error" are too summary in nature. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995)).

### III. ANALYSIS

Plaintiff's objections, both the 9/13/13 Objections and the 12/05/13 Objections, simply restate Plaintiff's allegations against the various Defendants, without citing particular errors the Magistrate Judge is claimed to have made. Plaintiff claims that Defendants were deliberately indifferent to his medical needs. Plaintiff complains about the lack of fresh food available in the prison system "since the MDOC shut down the prison farm system in 1979" and the negative effect that the food has had on his gout. He continues to complain about the alleged "misdiagnosis" that led to the amputation of his great left toe and subsequent alleged failures to provide him with orthotic shoes. He complains of medical indifference to his condition in general and opines that the level of medical care he has received as an inmate would be unacceptable in the general community. He does not, however, challenge the Magistrate Judge's observation that "the test for deliberate indifference under the Eighth Amendment is much more difficult to meet than the test for medical malpractice." (8/30/13 Report and Recommendation at 9.) Nor does he contest the Magistrate Judge's conclusion that Plaintiff has "not offered any evidence, by his own affidavit or otherwise, to rebut the information provided in the Defendants' affidavits, which shows that, for the most part, they had no direct involvement in Plaintiff's medical care." (*Id*. at 7.)

Notwithstanding the lack of specificity in Plaintiff's objections, the Court has reviewed the Magistrate Judge's Report and Recommendations and agrees with his conclusions. The Court is

sympathetic to the seriousness of Plaintiff's medical condition but is constrained to conclude that Plaintiff has offered insufficient evidence to create a genuine issue of fact that any of the moving Defendants bears sufficient personal responsibility to support liability under § 1983. The Court will, however, order that Defendants Squier and Jenkins answer or otherwise respond to Plaintiff's Complaint and will grant Plaintiff's request for the appointment of counsel.

The Magistrate Judge correctly states that a § 1983 Plaintiff must demonstrate that the defendant bears personal responsibility for the alleged constitutional deprivation and that generally "a court may not impose liability under 42 U.S.C. § 1983 on a defendant simply because that defendant denied an administrative grievance or failed to act based upon information contained in the grievance." (Report 8.) Additionally, as the Magistrate Judge notes, where a prisoner has received "some" medical treatment and the issue raised presents merely a difference of opinion over the nature of that treatment, a claim of deliberate indifference will not lie. (Report 6.) A claim of deliberate indifference can be premised upon a showing of an interruption in a prescribed plan of treatment or a delay in medical treatment. (*Id.*)

While denial of a grievance generally is insufficient involvement to support § 1983, it has been observed that in the context of a claim of deliberate indifference to the medical needs of a prisoner, "if the decision maker [denying the grievance] were a medical professional reviewing the recommendations of other medical professionals, there might be liability." *Calhoun v. Hill*, No. 07-11613, 2008 WL 4277171, at *6 (E.D. Mich. Sept. 17, 2008). The court in *Calhoun* went on to explain:

> The Sixth Circuit has explained that individuals who respond to a grievance are generally not liable under section 1983 . . . But contrary to the argument raised in defendant's objections, *Shehee [v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)] does not control this case, as it did not deal with a failure to provide medical care.

5

> Although a failure to remedy retaliatory behavior is not a constitutional violation in itself, an official who 'knows of and disregards an excessive risk to inmate health or safety' may be liable under the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). One who rejects a grievance conceivably could qualify, under some set of circumstances, as deliberately indifferent. There is no case that exempts a prison official who was deliberately indifferent to a serious medical need from liability simply because he occupies the position of supervisor or grievance respondent.

*Id.* at *7.

Additionally, it is well established that "some" medical care can amount to "no" medical care under certain circumstances. In *LeMarbe v. Wisneski*, 266 F.3d 429 (6th Cir. 2001), the Sixth Circuit recognized that doctors treating inmates cannot provide such minimal care as to provide wholly inadequate care:

> A government doctor has a duty to do more than simply provide some treatment to a prisoner who has serious medical needs; instead, the doctor must provide medical treatment to the patient without consciously exposing the patient to an excessive risk of serious harm.

266 F.3d at 439. *See also Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976) (recognizing that generally where the dispute is over the adequacy of the treatment that the prisoner received, no constitutional claim has been stated, but noting that "in some cases the medical attention rendered may be so woefully inadequate as to amount to no treatment at all.").

The Magistrate Judge correctly concluded that Defendant Scutt, the warden at Plaintiff's correctional facility who denied certain Step III Grievance Appeals, is entitled to summary judgment based upon a lack of personal involvement with Plaintiff's care and treatment. (ECF No. 8, Step III Grievance Response, PgID# 74, PgID#81, 88, 89, 95, 99-100, 107-08, 114, 123.)

The Magistrate Judge correctly concluded that Defendant Jones, an administrative assistant who reviewed Plaintiff's medical records, found that the treatment recommended by the Regional

6

Medical Officer was being followed, responded to Plaintiff's grievances and encouraged Plaintiff to utilize the kite procedure for further complaints, is entitled to summary judgment because the mere denial of a grievance cannot support a claim of § 1983 liability. (ECF No. 8, Step II Grievance Response, PgID#67, 73, 87.)

The Magistrate Judge correctly concluded that Defendant Hunter, the Health Unit Manager at Plaintiff's correctional facility, who responded to Plaintiff's grievance and sent Plaintiff's medical record to quality improvement to review for possible improvement, is entitled to summary judgment. (ECF No. 8, Step I Grievance Response, PgID# 71.)

The Magistrate Judge correctly concluded that Defendants Wilson, Smith and Ives, who responded to Plaintiff's grievances regarding his $5 copay, are entitled to summary judgment. (ECF No. 8, Step I and II Grievance Responses, PgID#77-80, 91-94.) Additionally, Plaintiff provides no evidence that Defendant Ives's June 15, 2010 response to Plaintiff's grievance regarding his painful toe presents special circumstances that would support a claim of section 1983 liability. (ECF No. 8, June 15, 2010 Step I Grievance Response, PgID# 65.)

The Magistrate Judge correctly concluded that Defendants Wilson and Creger, when responding to Plaintiff's grievance at Steps I and II regarding the failure to provide him with orthotics, are entitled to summary judgment where Plaintiff does not rebut the evidence that they investigated and found that the Regional Medical Officer had approved only high top shoes. (ECF No. 8, Step I and II Grievance Responses, PgID#84-85.)

The Magistrate Judge correctly concluded that Defendant Crawford, who merely denied as vague Plaintiff's grievances about gout and his diet, is entitled to summary judgment. (ECF No. 8, Step I Grievance Denial, PgID# 97, 104, 111.)

The Magistrate Judge correctly concluded that Defendants Hense and Wilson, who responded to and denied Plaintiff's October 17, 2011 Grievance complaining that he still had not received the orthotic device approved by Dr. Page, are entitled to summary judgment. Plaintiff does not rebut the evidence presented that their investigation revealed that at that time, approval for the prosthetic device had been faxed to physical therapy to schedule an appointment for measurements and fitting just ten days later, on 10/26/11. (ECF No. 8, Step I Grievance Response, PgID# 118-19.)

The Magistrate Judge correctly concluded that Defendant Aiken, who responded to Plaintiff's November 7, 2011 Grievance complaining that Defendants Hense and Wilson incorrectly handled his previous grievance and incorrectly stated that Plaintiff "would sign off when he received the device," is entitled to summary judgment because Plaintiff failed to rebut the evidence that she conducted an investigation that revealed that the PT department had recommended custom molded shoes but that the recommendation required RMO approval. Aiken's investigation noted that Plaintiff had an upcoming appointment on December 1, 2011 to address the issue of RMO approval. Aiken deferred to the medical judgment of Plaintiff's Medical Practitioners which did not support a claim that the treatment plan was inappropriate. Aiken encouraged Plaintiff to utilize the kite procedure. (ECF No. 8, Step II Grievance Response, PgID# 121.) Specifically, in her Step II investigation summary, nurse Aiken noted that on October 27, 2011, Plaintiff presented to the Physical Therapy Department at the Duane Waters Health Center with "RMO approval for a prosthetic device for the patient's hammer and amputated toe." The following information obtained from a review of Plaintiff's Electronic Medical Record (EMR) was noted by the orthotist who evaluated Plaintiff that day:

> 27th of October Thursday Patient has a RMO approval for a prosthetic for the patient's hammer and amputated toe. Patient was evaluated by the Certified

> Orthotist and stated as follows: Patient has partial right foot with severe hammer toes. Patient continues to develop ulcerations of dorsum of 2nd toe. Patient currently wears Deep Toes Box Boots. Patient would medically benefit from custom molded shoes to accommodate deformities. Patient is going to need a current and approved 407 for the custom shoes before patient can be made a future appointment with the Physical Therapy department and the Certified Orthotist.
>
> 10/17 RMO [Regional Medical Officer] approval requested for Tennis shoes of a generous size (instead of canvas shoes which are no longer offered by the State) dx neuropathy and hammertoes - Already had approval for orthopedic shoes for these problems (dated 7/30/11). Approved: Athletic shoes approved on 10/18/11.
>
> Right foot - partial amputation (great toe).
>
> Grievant has been approved for Orthotic, Athletic shoes and a Prosthetic device (recommended by Dr. Page). Grievant has seen the Ortho doctor from DWHC PT department who recommended custom molded shoes - which will require RMO approval. Grievant does have an upcoming appointment scheduled on 12/1/11 for this issue.

ECF No. 8-1, PgID#121, Step II Grievance Appeal Response, Sabrina Aiken RN. Plaintiff presented no evidence to rebut Aiken's affidavit testimony that she appropriately responded to this grievance, which indicated an upcoming appointment to address the issue raised in the grievance.

On November 18, 2011, Plaintiff submitted another grievance complaining that the ulcerations on this foot still had not been attended to and claiming that various MDOC personnel were conspiring to murder him. (ECF No. 8, 11/18/11 Grievance, PgID#126.) Defendant Ryan responded and Defendant Wilson, who was familiar with Plaintiff no doubt from the October 17, 2011 grievance, reviewed and denied the grievance, noting that there had been a previous determination of no medical necessity for orthopedic shoes and noting that Plaintiff had an appointment with his Medical Practitioner on December 1, 2011, then just a week away, to evaluate the foot. (*Id*. at PgID# 126-27.) Plaintiff presented no evidence to rebut the finding of the grievance responder that the investigation revealed that there had been a determination of no medical necessity

9

for orthopedic shoes and offered no evidence to rebut Ryan's affidavit testimony that she followed the orders of the Medical Providers and had no authority to countermand those orders. The Magistrate Judge correctly concluded that Defendants Ryan and Wilson are entitled to summary judgment with regard to their involvement in denying this grievance.

On February 23, 2012, Plaintiff saw Physicians Assistant Adrianne Neff who finally documented the severity of Plaintiff's condition:

> Patient with history of amputation of left great toe in 2010 with subsequent development of plantar tyloma and plantar pressure ulcer, along with worsening deformity (medial deviation 2,3,4 hammer toes 3,4 and claw toe, 2) of remaining toes has now developed a pressure ulcer on the prominent surface of the 2nd toe. Plantar pressure ulcer is not healing well despite serial debridements; patient has recently been treated for MRSA-positive infection of this ulcer.

ECF No. 8-1, PgID# 140, Michigan Department of Corrections Consultation - 2/23/2012. Neff also observed as follows:

> I would like Dr. Page to consider more aggressive debridment of the two existing ulcers and the plantar tyloma, and make new recommendations regarding possible orthotic modifications to patient's footwear to prevent further breakdown and infections. In the past Dr. Page recommended a prosthetic device to correct left second hammer toe; this toe is now a claw toe and quite fixed and I doubt it can be corrected with a typical splinting device. He also recommended a "custom molded insert with a toe filler and metatarsal toe to offload the metatarsal area," *which was never pursued*. Given that patient has developed increased medial deviation of remaining toes and continues to develop hypertrophic callosites with underlying ulcers in this area, would like updated recommendations.

ECF No. 8-1, PgID# 141, 2/23/2012 MDOC Consultation Notes, Adrianne M. Neff, PA (emphasis added).

On March 19, 2012, Plaintiff submitted a grievance indicating he had seen Dr. Page, that amputation of his second toe was now a possible plan of treatment and complaining that as of that date, Plaintiff still had not received the orthotic shoes that had been first recommended in October,

10

2010. RN Kinder investigated the grievance and responded. (ECF No. 8-1, Step II Grievance Response - 3/28/2012.) Kinder's summary notes that Plaintiff had his left great toe amputated on April 6, 2010 and notes that on February 2, 2012, Plaintiff went for debridement of his ulcerated foot. Kinder's investigation does not mention Neff's 2/23/2012 consultative note but notes that on 3/26/2012, the Medical Practitioner submitted an "appeal to approve, custom molded" shoes to alleviate foot pressure and ultimately to prevent amputation of the second toe and metatarsal head. *Id*. Kinder concludes based on her investigation that Plaintiff was being treated by the MP and that disagreement with the MP's treatment plan did not support a claim that the treatment was inappropriate. *Id*.

On February 27, 2012, Dr. Harriet Squier, who has been named as a Defendant but waived answer (ECF Nos. 23, 27), reviewed PA Neff's recommendations and authorized only further debridement of Plaintiff's wounds. Despite PA Neff's opinion noted in her consultation notes of February 23, 2012, that the failure to timely provide the long approved custom molded orthotic device likely resulted in the further deformation of Plaintiff's second toe, now a "claw toe" and "quite fixed" and unlikely to be resolved with "a typical splinting device," Squier did not approve or recommend the custom molded shoes and stated that "adjustments to [plaintiff's] shoe size and padding can be accomplished through MDOC procurement." (ECF No. 8-1, 2/27/2012 Reviewer Comments, PgID# 143.) The Court is ordering Dr. Squier to answer or otherwise respond to Plaintiff's Complaint.

On 3/23/2012, Dr. Haresh Pandya, MD, who did not provide any direct medical care to Plaintiff but had been approving requests for various medications and supportive shoes for Plaintiff since his 2010 amputation, deferred the 3/23/2012 request for "custom molded shoes to prevent

11

amputation of Plaintiff's second toe and metatarsal head," noting that "patient specific appliances require Corizon UMD approval." ECF No. 31-12, Affidavit of Haresh Pandya, MD, ¶ 5, p. 11 RMO Review dated 3/23/2012. While one might question why Dr. Pandya, who had the benefit of PA Neff's consultation notes, wasn't able to act more expeditiously or to otherwise intervene to obtain the requested orthotic, Plaintiff presented no evidence to rebut Dr. Pandya's affidavit testimony that he had approved multiple requests for Plaintiff over the years but was unable to approve the custom molded device because it required Corizon approval. Notably, Dr. Pandya did not deny the request, but only deferred it for Corizon approval.

The elements of a deliberate indifference claim are well established in the Sixth Circuit. "A deliberate indifference claim has both objective and subjective components. The objective component requires a plaintiff to show that the medical need at issue is sufficiently serious. The subjective component requires a showing that prison officials have a sufficiently culpable state of mind in denying medical care." *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011) (internal quotation marks and citations omitted). Plaintiff's burden in establishing the prison official's "sufficiently culpable state of mind" is difficult to meet and requires evidence from which to infer that the prison official "subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Phillips v. Roane County, Tenn.*, 534 F.3d 531, 540 (6th Cir. 2001).

There can be no dispute that Plaintiff's foot condition constitutes a serious medical condition and that the objective component of the deliberate indifference inquiry is met here. Plaintiff already lost one toe to amputation and, according to at least one medical source, suffered further deformation of his foot due at least in part to the failure to obtain the custom orthotic that had been ordered for

him in 2010. In March, 2012, the medical evidence clearly supported Plaintiff's claims of significant ulcerations, deformities and infections at the site of the amputation.

As to the subjective component, the Court concludes that even viewing the facts in the light most favorable to the Plaintiff, no reasonable trier of fact could conclude based on the evidence presented that any of these Defendants "subjectively perceived facts from which to infer substantial risk to the prisoner, that he [or she] did in fact draw the inference, and that he [or she] then disregarded that risk." *Phillips*, 534 F.3d at 540. Each of these Defendants was either following orders of supervising medical providers, merely responding to a grievance or, in the case of Dr. Pandya, deferring to the entity with authority to make the final decision regarding the provision of a medical device. Plaintiff believes that these grievance responders knew of the alleged misdiagnosis and allegedly unnecessary amputation of his great left toe, knew that Plaintiff was being denied a necessary medical device, and consciously chose to do nothing about it. Plaintiff, however, has failed to proffer any evidence in support of his allegations as to the knowledge, conduct or authority of these grievance responders. Furthermore, Plaintiff does not challenge Dr. Pandya's statement that the UMD, not the RMO, was the only entity authorized to approve his requested orthotics. Dr. Pandya did not deny the request but deferred it and, importantly, had approved several of Plaintiff's medical practitioner's requests for medical treatment beginning in July, 2011.

Finally, the Magistrate Judge correctly concluded that Defendant Haase, who gave Plaintiff advice on a high fiber diet, and Defendants Monroe and Willard, registered dieticians who did nothing more than respond to grievances regarding dietary complaints, were entitled to summary judgment. (ECF No. 8-1, Step I Grievance Response, PgID# 146.)

"It is obduracy and wantoness, not inadvertence or error in good faith, that characterize the

13

conduct prohibited by the Cruel and Unusual Punishments Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). While it appears possible, based upon the medical evidence as summarized in Adrianne Neff's February 23, 2012 consultation, that Plaintiff's recommended treatment plan may have been derailed, or that Plaintiff may have been denied a medical device that could have prevented the further deterioration of his foot following the 2010 amputation of his great left toe, Plaintiff has not produced sufficient evidence to permit the Court to conclude that any of these moving Defendants bears sufficient personal responsibility for this claimed denial such that summary judgment in their favor should be denied.

The Court will, however, ORDER that Dr. Harriet Squier and Dr. Eddie Jenkins, who waived answer pursuant to 42 U.S.C. § 1997e(g)(1), answer or otherwise respond to the Complaint on or before June 2, 2014 and the case will proceed against them.

Additionally, the Court notes that on January 14, 2013, Magistrate Judge Whalen denied without prejudice Plaintiff's Renewed Motion for Appointment of Counsel pending final determination of the dispositive motions filed by the Defendants. (ECF No. 40, Order Denying Appointment of Counsel.) Although the Court is adopting the Magistrate Judge's recommendation to grant the presently-filed motions for summary judgment, because the Court is ordering that Defendants Squier and Jenkins respond to Plaintiff's Complaint, the Court REINSTATES Plaintiff's motion for appointment of counsel, grants that motion and directs that counsel be appointed to represent Plaintiff going forward in this litigation.

**IV. CONCLUSION**

For the foregoing reasons, the Court:

(1) ADOPTS Magistrate Judge Whalen's August 30, 2013 Report and Recommendation (ECF No. 50);

14

(2) ADOPTS Magistrate Judge Whalen's November 21, 2013 Report and Recommendation (ECF No. 52);

(3) GRANTS Defendants' Hunter, Ryan, Creger, Wilson, Smith, Crawford, Hense, Aiken, Pandya, Haase, Monroe and Motion for Summary Judgment; (ECF No. 31);

(4) GRANTS Defendants McMillan and Ives's Motion for Summary Judgment (ECF No. 37);

(5) DENIES Plaintiff's Motion for Judgment on the Pleadings (ECF No. 45);

(6) GRANTS Plaintiff's Renewed Motion for Appointment of Counsel; (ECF No. 36);

(7) ORDERS Defendants Squier and Jenkins to answer or otherwise respond to Plaintiff's Complaint on or before June 3, 2014; and

(8) DIRECTS that counsel be appointed to represent Plaintiff going forward in this litigation.

IT IS SO ORDERED.

s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: April 30, 2014

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on April 30, 2014.

s/Deborah Tofil
Case Manager